MAY TERM, 1881, No. 75.　　　　　　　　MAY 4TH, 1881.

## Elizabeth Brubaker's Appeal.

1. Letters of administration should not be granted to two or more persons jointly unless they mutually agree to accept the trust.
2. Two separate co-ordinate administrations on the same estate are unknown to our jurisprudence in theory, and would be entirely impracticable in practice.
3. When the class primarily entitled to administration consists of two or more persons, it is the duty of the register to grant letters to such one, or more of them, as he shall judge will best administer the estate; and when properly exercised, his discretion is not the subject of review, either in the Orphans' Court or here.
4. Primogeniture gives no right of preference; but if the scale is in other respects exactly poised, the fact of being the elder brother or sister, ought to incline the balance.
5. When the register has exercised his discretion he cannot revoke the letters except for sufficient cause.
6. When, therefore, the register had granted letters of administration to the older of two daughters of the decedent, and the Orphans' Court, against the wish of the administratrix, afterward directed that letters should also be granted to the younger daughter, it was held to be error.

APPEAL from the decree of the Orphans' Court of Lancaster County, ordering the issue of letters of administration upon the estate of Jacob Sheaffer, deceased.

Jacob Sheaffer died intestate, August 14th, 1880, leaving no widow and but two children, Elizabeth Brubaker, wife of Levi B. Brubaker, and Lavinia Wolf, wife of Henry Wolf. Letters of administration were granted by the register of Lancaster County to Elizabeth Brubaker, the elder daughter, August 24th, 1880. Lavinia Wolf, the younger daughter,

and her husband, September 2d, 1880, made application by petition to the register, asking to be joined in the letters of administration already granted. The register refused a hearing and denied the application, whereupon Mrs. Wolf and her husband appealed to the Court below, September 11th, 1880, and the Court granted a rule to show cause why she should not be joined in the administration. Depositions were taken upon both sides, from which it appeared that Levi B. Brubaker and Henry Wolf were both indebted to the estate of the decedent, that they and their wives had endeavored to come to a settlement without success, and Mrs. Brubaker testified that she and her sister would not be able to get along together in the settlement of the estate.

The Court below, PATTERSON, J., sustained the appeal and ordered letters of administration to be issued to Mrs. Lavinia Wolf " on her father's estate upon her entering good and sufficient security with the register for the faithful performance of her duties as administratrix, providing her husband's assent is obtained, which assent will be evidenced by his joining in the administration bond."

From this decree Mrs. Brubaker appealed, and it was assigned for error that

1. The Court erred in ordering and decreeing letters of administration to be issued to Lavinia Wolf.

2. The Court erred in forcing a joint administration upon Mrs. Brubaker, to whom letters of administration had already been granted on this estate.

*H. C. Brubaker* and *A. J. Eberly*, for appellants.

*First:* Should the Court have interfered with the register after he had granted letters? The 22d section of the act of March 15th, 1832, provides that the register shall grant letters to "such one or more of them as he shall judge will best administer the estate." This clause applies where there is no widow, or she renounces. The discretion of the register is limited to a selection from those asking in each class in their order: Eshleman's Appeal, 15 P. F. Smith, 313. While primogeniture gives no right of preference, if the scale is poised, being the elder would incline the balance: Hood on Executors, p. 64; 1 Williams on Executors, p. 427; Warwick *v.* Greville, 1 Phillimore, 125; Coppin *v.* Dillon, 4 Hagg., 376. When the register had made his choice his discretion was gone and he could not revoke the letters unless for cause. Shomo's Appeal, 7 P. F. Smith, 356; Hood on Executors, p. 64. The correctness of this construction appears more clearly from an inquiry into the origin of the statute 21 Henry VIII, ch. v.; Rob. Dig., 250; Hood on Executors, p.

[Elizabeth Brubaker's Appeal.]

467; McClelland's Appeal, 4 Harris, 115; see also Toller, p. 89; 1 Williams, p. 371.

*Second:* It was forcing a joint administration on the appellant. Letters granted to more than one person must necessarily be joint. They could not sue or be sued separately, or sue each other for their respective indebtedness to the estate: Simon *v.* Albright, 12 S. & R., 429.

A sole administration is preferred by the Court, and a joint administration is never forced: 1 Williams on Executors, pp. 363, 374 to 375; Hood on Executors, p. 64; Toller, p. 89; Bell *v.* Timismore, 2 Phillimore, 22; Dampier *v.* Colson, Ibid. 54; Leggatt *v.* Leggatt, 1 Lee, 375.

*S. P. Eby,* for the appellee.

Neither the Courts below nor the Supreme Court hesitate to reverse the decisions of the register when justice requires it: Williams's Appeal, 7 Barr, 259; McClelland's Appeal, 4 Harris, 111; Bieber's Appeal, 1 Jones, 157; Eshleman's Appeal, 15 P. F. Smith, 311.

The interests involved in this estate dependent upon these two daughters being placed upon perfect equality, are too weighty to be overturned by the simple fact of the difference in ages.

The opinion of the Court was delivered by STERRETT, J.

Jacob Sheaffer survived his wife and died intestate, August 14th, 1880, leaving, as his only heirs at law, two married daughters, Elizabeth Brubaker and Lavinia Wolf. Ten days after his decease letters of administration on his estate were duly granted by the register to Mrs. Brubaker, the elder daughter; and on September 2d the petition of the younger daughter and her husband was presented, praying that she be joined with her sister in the administration already granted. This application was refused by the register, and thereupon the petitioners appealed from his decision to the Orphans' Court, and a rule, with notice to Mrs. Brubaker, was granted to show cause why Mrs. Wolf should not be joined in the administration. Under this rule depositions were taken by both parties, and the Court, after hearing, on January 29th, 1881, made a decree sustaining the appeal and ordering letters of administration to be issued to Mrs. Wolf, " on her father's estate, upon her entering good and sufficient security with the register for the faithful performance of her duties as administratrix, providing her husband's assent is obtained, which assent will be evidenced by his joining in the administration bond."

It is contended that the Court erred in thus ordering let-

[Elizabeth Brubaker's Appeal.]

ters of administration to be issued to Mrs. Wolf, and in forcing a joint administration against the consent of Mrs. Brubaker, to whom letters had been previously granted.

The learned judge in his opinion says: "The present administratrix and the appellant are both equally competent to perform the duties of administrators; both stand in equal degree of relationship to the decedent; both have equal share or interest in his estate; and, looking on this appeal, we look at the whole case on its merits and the rights of the respective parties, and we are of the opinion that letters of administration should be granted to this appellant, that both may be on an equality. But the Court does not feel at liberty to enjoin a joint administration between these sisters; indeed, the prevailing rule is not to enforce a joint administration on unwilling parties."

It is very evident from this that the Court recognized the impropriety of attempting to create a joint administration against the protest of one of the parties thereto. The nature of the office forbids it. Joint administration necessarily involves joint liability, and no one can be compelled to assume such responsibility. Due regard to individual rights, as well as the interest of the estate, requires that administration should not be committed to two or more persons unless they mutually agree to accept the trust. Nor does the decree in this case require joint administration. If it did, it would be manifestly wrong; but its effect is to create two separate co-ordinate administrations on the same estate, and for that reason it is equally objectionable. Such a thing is unknown to our jurisprudence, even in theory, and in practice it would be entirely impracticable. Under the English statute the ordinary may commit the administration to the widow and next of kin jointly, or he may grant to one exclusive administration of a particular portion of the goods of the intestate, and to the other a separate administration of the residue; but no warrant for any such practice as that contemplated by the decree of the Orphans' Court can be found in our statute.

When the class primarily entitled to administration consists of several persons, it is the duty of the register to grant letters to such one or more of them as he shall judge will best administer the estate. He may thus grant letters to them all jointly, if they so desire; or, in his discretion, he may select one of them and commit the administration to him alone, to the exclusion of the others; and, when properly exercised, his discretion is not the subject of review, either in the Orphans' Court or here. He is not bound to select the oldest in preference to the youngest of the class entitled

[Heidelbaugh v. Thomas.]

to administration. Primogeniture gives no right of preference so as to weigh against the wish of the majority of interests; yet, if things were precisely equal, if the scale is exactly poised, being the elder brother would incline the balance: Hood on Executors, 64; 1 Williams on Executors, 4:?7; and the same principle applies to the elder of two sisters. In Shomo's Appeal, it is said among children the right does not depend on seniority, it is entirely in the discretion of the register; but when he has exercised his discretion by selecting one of the sons, it is no longer in his power to revoke the letters thus granted and issue them to another, except for sufficient cause. " When administration has been committed to any of the next of kin, others, even in the same degree of kindred, have, during the life of the administrator, no title to a similar grant:" Hood on Executors, 64. In the case before us, the two daughters of the intestate were equally competent to administer, and the register might have granted letters to them jointly if they had so desired; but he was not bound to do so. In the exercise of his discretion he selected Mrs. Brubaker, who requested that letters should be issued to herself alone. Having done so, it was not in his power to revoke the letters thus granted, or to join the younger sister in the administration against the will of the other. Nor is there anything in the circumstances, as disclosed by the testimony, to justify the Court in reversing the decision of the register and creating a dual administration, which, if it could be permitted to stand, would undoubtedly be prejudicial to the interests of the estate.

The decree of the Orphans' Court is reversed and set aside, and the decision of the register is affirmed ; and it is ordered that the costs, including the costs of this appeal, be paid by the appellee.